IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CR265 |
| | ) | |
| v. | ) | |
| | ) | |
| RIGOBERTO ESPINOZA-RAYA, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the defendant's objection, Filing No. 43, to the report and recommendation (R&R) of the magistrate judge, Filing No. 40. The magistrate judge recommended denial of the defendant's motion to suppress, Filing No. 25. *See* Filing No. 43, R&R; Filing No. 42, Transcript (Tr.) at 99-100. The defendant has been charged with falsely representing that a social security account number was assigned to him for the purpose of opening a bank account, knowing that the number was not his, in violation of 42 U.S.C. § 408(a)(7)(B).

Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a *de novo* determination of those portions of the R&R to which the defendant objects. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed the record including the transcript of the suppression hearing on October 2, 2009. *See* Filing No. 42, Transcript. The court accepts the factual findings of the magistrate judge and they need not be fully repeated here. Id. at 104-09.

Briefly, the evidence adduced at the hearing shows that Special Agent Brian Dostal of the Office of the Investigator General (OIG) for the Social Security Administration conducted an investigation after a bank reported that an individual known as Rigoberto

Espinoza had opened an account using a nonexistent Social Security number. *Id.* at 8. As part of the investigation, Special Agent Dostal learned that a person with the same name and date of birth had previously been deported. *Id.* at 9, 35. Special Agent Dostal testified that he then contacted Immigration and Customs Enforcement ("ICE") Agent David Gran to aid the investigation. *Id.* at 10. The two law enforcement officers traveled to Lincoln, Nebraska, to locate the individual. *Id.* at 13. They spoke to his employer and stopped at his residence but no one was home. *Id.* at 11-12. The defendant later returned a phone call, in response to a message left by Special Agent Dostal. *Id.* at 40, 82.

About a month later, the agents again traveled to Lincoln to locate the individual. *Id.* at 13. They waited in their vehicles for the defendant to leave his home and get into his car. *Id.* at 18. The officers then drove their vehicles to the end of the defendant's driveway, exited their vehicles, approached the defendant, identified themselves, and asked the defendant his name and whether he had immigration papers. *Id.* at 18, 20. Special Agent Gran testified that he asked the defendant if he was Rigoberto Espinoza-Monge, which was the name of a person previously deported who had the same date of birth as the defendant and the respondent responded that he was not. *Id.* at 59. Special Agent Gran also asked where the defendant was born and he responded "Mexico." *Id.*

The officers then escorted the defendant to Special Agent Dostal's vehicle and Special Agent Gran read him his *Miranda*[1] rights in Spanish. *Id.* at 22. The defendant refused to sign the written *Miranda* waiver, but verbally agreed to waive his *Miranda* rights

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

and to continue to talk to the officers. *Id.* at 24.  In answer to the agents' inquiries, the defendant stated that he had purchased a Social Security card for $150.00. *Id.* at 24.  He further identified the bank statements as his and acknowledged that he had opened the bank accounts using the Social Security card. *Id.* at 44-45.  He again denied that he was the person known as Rigoberto Espinoza-Monge, pointing to a photograph in a stack of papers in Special Agent Dostal's vehicle and stating, "That's not me." *Id.* at 44.  He stated that he had never been deported. *Id.* at 67-68.  Special Agent Gran told the defendant that his identity would be determined by fingerprints at the immigration office in Omaha. *Id.* at 68.

At the conclusion of the interview, Special Agent Gran informed Espinoza-Raya that he was being placed under arrest for being an alien illegally present in the United States. *Id.*  Espinoza's wallet was retrieved from his pocket and inventoried at the immigration processing facility and a Michigan driver's license and counterfeit Social Security card were found in the wallet. *Id.* at 30-31.

The magistrate judge found that the testimony of Special Agents Dostal and Gran was credible. *Id.* at 104.  He adopted the position taken by both parties that Espinoza-Raya was in custody at the time he was moved to Dostal's vehicle, triggering the *Miranda* protections. *Id.* at 104-05.  He further found that the defendant was informed of his rights in Spanish and freely and voluntarily waived those rights. *Id.* at 105-06.  The magistrate judge also found that the defendant's statements after he had been Mirandized, together with the information the agents had discovered during their investigation, furnished probable cause to arrest the defendant. *Id.* at 107.

3

The defendant objects to the magistrate judge's report and recommendation. Filing No. 43. He contends that the magistrate judge erred in finding the warrantless arrest was supported by probable cause and agues that the immigration officer had operated outside his limited statutory authority to arrest without a warrant under 8 U.S.C. § 1357 absent a showing of likelihood of escape. He further asserts that the officers violated 8 U.S.C. § 1357 in failing to bring him "without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the United States." *Id.* The defendant further challenges the magistrate judge's conclusion that he freely and voluntarily waived his *Miranda* rights.

Although the Fourth Amendment provides protection against random or gratuitous questioning related to an individual's immigration status, government agents may stop and question a person regarding immigration status in they have a reasonable suspicion of alienage. *See e.g., Rajah v. Mukasey*, 544 F.3d 427, 441 (2d Cir. 2008); *United States v. Brignoni-Ponce*, 422 U.S. 873, 882 (1975). Immigration agents are also authorized under the statute to interrogate suspected aliens for possible violations of immigration laws. 8 U.S.C. § 1357(a)(1). Under the interrogation component of the statute, immigration officers may "may make forcible detentions of a temporary nature for the purposes of interrogation under circumstances creating a reasonable suspicion, not arising to the level of probable cause to arrest, that the individual so detained is illegally in this country." *Au Yi Lau v. United States Immigration and Naturalization Serv.,* 445 F.2d 217, 223 (D.C. Cir. 1971) (applying principles of *Terry v. Ohio,* 392 U.S. 1, 14 (1968)). A plain reading of the statute requires the government to show that immigration officials believe that a person is an alien

before questioning him. *United States v. Flores-Sandoval*, 422 F.3d 711, 714 (8th Cir. 2005); *see also* 8 C.F.R. § 287.8(b)(2) (an immigration official may briefly detain the person for questioning if he has a reasonable suspicion based on specific articulable facts that the person is engaged in an offense against the United States or is an alien illegally in the United States). This allowance for mere questioning, which assumes the individual's cooperation, is analogous to decisions that contemplate the same scope of authority for police officers. *Shu Fuk Cheung v. INS*, 476 F.2d 1180, 1983 (D.C. Cir. 1971). After a stop supported by reasonable cause, any further detention or search must be based on consent or probable cause. *Brignoni-Ponce,* 422 U.S. at 882.

An immigration agent is authorized to make arrests without a warrant for "any offense against the United States, if the offense is committed in the officer's or employee's presence" or "for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony . . . and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(5)(A)&(B). An agent is also authorized to make arrest for felony immigration offenses if the officer has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest. 8 U.S.C. § 1357(a)(2) &(4). A person arrested for a felony immigration offense must be "taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States." *Id.* In the context of an arrest under this section, 8 U.S.C. § 1357(a), "'reason to believe' is the equivalent of

probable cause." *United States v. Sanchez*, 635 F.2d 47, 63 (2d Cir. 1980); *Au Yi Lau*, 445 F.2d at 222. Similarly, the Inspector General Act provides that OIG agents may be authorized by the Attorney General to "make an arrest without a warrant while engaged in official duties . . . for any offense against the United States committed in the presence of such [agent], or for any felony cognizable under the laws of the United States if [the agent] has reasonable grounds to believe that the person to be arrested has committed or is committing such felony." 5 U.S.C. App. 3 § 6(e)(1).

The court agrees with the magistrate judge's conclusions that the defendant's arrest and interrogation were proper. The record shows that the ICE agent was in possession of information to support a reasonable suspicion that the defendant was an illegal alien. Accordingly, it was proper to question the defendant with respect to his identity and immigration status. The agents' further detention of the defendant was supported by probable cause and the custodial questioning of the defendant was pursuant to consent. Moreover, the court agrees that the consent was voluntary and knowing. There is nothing in the record that suggests a threatening or coercive environment.

The defendant's claim that the agents lacked authority to arrest him is without merit. The statute permits an arrest for any offense--felony or misdemeanor--committed in the presence of the agent. The offense of being an alien illegally present in the United States was committed in the officers' presence. In addition, both officers had reasonable grounds to believe the defendant had committed the offenses of illegal reentry and Social Security fraud. Despite the defendant's initially cooperative attitude, as evidenced by his returning Special Agent Dostal's phone call, there was a likelihood the defendant would escape before a warrant could be obtained once he had been presented with evidence of, and had

admitted use of the counterfeit Social Security card.  Accordingly, the court finds the report and recommendation of the magistrate judge should be adopted.

    IT IS ORDERED:

1. The defendant's objection (Filing No. 43), to the report and recommendation of the magistrate judge is overruled;

2. The report and recommendation of the magistrate judge (Filing No. 40) is adopted.

3. The defendant's motion to suppress (Filing No. 25) is denied.

DATED this 21st day of December, 2009.

                                                BY THE COURT:

                                                /s Joseph F. Bataillon

                                                Joseph F. Bataillon
                                                United States District Judge